IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TIMOTHY JUSTON WIMER,**

    Petitioner,

v.                                                         **Civil Action No. 2:15cv2**
                                                             **Criminal Action No. 2:13cr27-1**
                                                             **(Judge Bailey)**

**UNITED STATES OF AMERICA,**

    Respondent.

## REPORT AND RECOMMENDATION/OPINION

### I. Introduction

On January 2, 2015, the *pro se* petitioner, an inmate at FCI McDowell in Welch, West Virginia, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. On January 7, 2015, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Dkt.# 52). The Government filed its response in opposition and a memorandum in support on February 6, 2015. (Dkt.#s 59 and 60). Petitioner did not file a reply. However, on March 25, 2015, he wrote a letter to the Court, contending he had received nothing back from the court since filing his petition; did not know if it had been filed; and did not know if any ruling had been made on it. He requested a copy of the docket sheet and copies of "any pertinent filings." (Dkt.# 61). The Clerk of Court sent him a copy of the docket sheet. (Dkt.# 61). Even after receiving a copy of the docket sheet, petitioner still filed no reply.[1]

---

[1] A review of the docket indicates that petitioner's address has remained the same since he initiated this action, and that copies of the paperless notice regarding the opening of the civil case for statistical purposes and the Notice of General Guidelines for Appearing *Pro Se* in Federal Court, sent to him on January 5, 2015 via certified mail, return receipt requested, were accepted for delivery at FCI McDowell, but the delivery date was left blank. Nonetheless, that return receipt was received by the court and docketed on January 7, 2015. (Dkt.# 51). Further, a copy of the January 7, 2015 Order to Answer, also sent to petitioner via certified mail, return receipt requested, was accepted for delivery at FCI McDowell on January 12, 2015. (Dkt.# 57). Finally, the certificate of service on the Government's response indicates that that response was sent to petitioner at his address listed on the docket. See Dkt.# 60 at 10.

## II. Facts

### A. Conviction and Sentence

On July 24, 2013, the Grand Jury returned a fifteen-count Indictment with a forefeiture allegation against petitioner, charging him with various drug-related offenses and one count of felon in possession of a firearm. (Dkt.# 17).

On September 11, 2013, Petitioner signed a plea agreement in which he agreed to plead guilty to Count One, Seven, Nine and Thirteen. (Dkt.# 25). Count One charged Petitioner with Possession with Intent to Distribute Hydrocodone, in violation of Title 21, United States Code §§841(a)(1) and 841(b)(1)(E)(i). Count Seven charged Petitioner with Possession with Intent to Distribute Oxycodone, in violation of Title 21, United States Code §§841(a)(1) and 841(b)(1)(C). Count Nine charged Petitioner with Possession with Intent to Distribute Methamphetamine, in violation of Title 21, United States Code §§841(a)(1) and 841(b)(1)(C). Count Thirteen charged Petitioner with Possession with Intent to Distribute Morphine, in violation of Title 21, United States Code §§841(a)(1) and 841(b)(1)(C). (Id.).

In the plea agreement, the parties stipulated and agreed that petitioner was a career offender, and that his Guideline base offense level would be established by Guideline 4B1.1(b)(3) at 32. (Dkt.# 25, ¶12 at 5). Further, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the plea agreement contained the following language regarding Petitioner's waivers:

> 14. The defendant is aware the Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily waives the right to appeal his sentence or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742, if

his sentence is consistent with a Guideline total offense level 29, at Criminal History VI, or lower.

15. The defendant also waives the right to challenge the sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, the defendant's waiver contained in this paragraph will be voided provided the defendant complies with the Rules of Appellate Procedure.

Id., ¶¶14 and 15 at 5 - 6.

On September 19, 2013, Petitioner appeared before United States Magistrate Judge John S. Kaull to enter his plea of guilty in open court. Petitioner was twenty-nine (29) years old and had graduated from the twelfth grade at the time of his plea. (Dkt.# 59-2 at 9). He testified that he could read, write and understand the English language. (Id.). He denied any physical or mental disability that might affect his ability to fully participate in the proceedings; denied any recent illegal drug or alcohol use; and denied any recent over-the-counter medications. (Id. at 9 - 10). Petitioner testified that he understood and agreed with all the terms and conditions of the plea agreement. (Id. at 18 - 22). The Court specifically asked Petitioner if he understood that under the terms of the waiver of his appellate and post-conviction relief rights, he only retained those rights if the sentence he ultimately received was consistent with a Guideline total offense level 29 and a Criminal History VI or lower, and petitioner said that he did. (Id. at 15 - 16). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 23 and 27 - 29). During the plea hearing, the Government presented the testimony of Corporal Tom Kessel of the West Virginia State Police Bureau of Criminal Investigation ("WVSP BCI"), to establish a factual basis for the plea. (Id. at 32 - 39). The petitioner did not contest the factual basis of the plea. (Id. at 39).

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Counts One, Seven, Nine and Thirteen of the indictment. (Id. at 30 - 31). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 22 – 23 and 30 - 31). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 19). The petitioner testified that he had gotten along with his attorney well; his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 12 – 13 and 16 - 18). Finally, petitioner said he was in fact guilty of the crimes to which he was pleading guilty. (Id. at 23).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, and that the petitioner understood the consequences of pleading guilty, including the charges; the statutory maximums for the charges; the interplay of the Uniform Sentencing Guidelines; the terms and provisions of his plea agreement; the limited waiver of his direct appeal and collateral attack rights; and all the rights Petitioner was giving up by pleading guilty. The petitioner did not object to the Court's finding.

On December 18, 2013, the petitioner appeared before United States District Judge John P. Bailey for sentencing. After considering several factors, including petitioner's eight contacts with law enforcement during the course of his prosecution on the instant charges indicating the lack of deterrence from his drug dealing activities; the circumstances of the crimes; the petitioner's long criminal history; status as a career offender, and the sentencing objectives of punishment, the Court sentenced Petitioner to 120 months on Count One and 188 months each on Counts Seven, Nine and Thirteen to run concurrently for a total term of 188 months imprisonment, the highest end of the applicable career offender guidelines, to be followed by

three years supervised release on each count, to run concurrently. (Dkt.# 59-3 at 10 and 16 - 17). The Court recommended petitioner participate in the Bureau of Prison's ("BOP") 500 hour residential substance abuse program and that he be permitted to participate in any educational or vocational opportunities available while incarcerated. (Id. at 10). Further, the Court recommended that once on supervised release, in addition to the usual restrictions, Petitioner was required to comply with the requirements of the Sex Offender Registration and Notification Act and participate in a program of sex offender treatment.[2]

Finally, the Court noted that petitioner had entered into a plea agreement that waived in whole or in part his right to appeal; that such waivers were generally enforceable; that the waiver appeared to be enforceable in this case; but nonetheless, if petitioner believed his waiver was unenforceable for any reason, or his plea somehow unlawful or involuntary, or that there was some other defect with the proceedings, if petitioner wished to appeal, he must file a notice of appeal within fourteen days following the entry of the judgment and commitment order. Further, the Court advised petitioner that if he wished, the Clerk of Court could enter the notice of appeal for him. Petitioner did not reply. (Id. at 19 - 20).

**B. Appeal**

Petitioner did not pursue a direct appeal.

**C. Federal Habeas Corpus**

**Petitioners' Contentions (Dkt.# 47)**

---

[2] Petitioner had a prior felony conviction for third degree sexual assault and was arrested on June 22, 2013 on a state complaint for failing to update his sex offender registration. See PreSentence Investigation Report ("PSR"), Dkt.# 34, ¶¶ 59, 68, 98 at 13, 16, and 22 – 23.

In his petition, filed without a memorandum in support, Petitioner raises four grounds of ineffective assistance of counsel, contending that counsel's performance was deficient because he:

1) failed to properly advise petitioner of the amount of time he could receive by accepting a plea agreement;

2) failed to properly advise petitioner on the significance of his waiver of direct appeal and/or collateral attack rights;

3) failed to file a notice of appeal, even though petitioner requested that he do so; and

4) should have used Alleyene[3] or Descamps[4] in regard to advising petitioner to either plead guilty or go to trial.

Petitioner did not request any specific relief.

**Government's Response (Dkt.# 59 & 60)**

The Government noted that incident to his plea agreement, Petitioner waived the right to collaterally attack his sentence. Further, the Government responded:

1) the petitioner's Ground One and Two claims regarding inadequate advice from counsel regarding his sentencing exposure and the significance of the appellate waiver are refuted by his sworn testimony at the plea hearing;

2) petitioner's Ground Three claim that counsel failed to file an appeal on his behalf, after he requested that counsel do so is contrary to petitioner's sworn statements at his plea hearing; however, ultimately, this is a matter between petitioner and trial counsel, who respectfully refuses to divulge attorney-client privileged information unless, pursuant to ABA Formal Opinion 10-456, he is ordered to do by the court; and

3) as for Ground Four, Alleyne has no applicability to petitioner's case, because it concerns mandatory minimum sentences, and petitioner was not exposed to a mandatory

---

[3] Alleyne v. United States, 133 S.Ct. 2151 (2013)(holding that any factual issues triggering a statutory mandatory minimum sentence must be submitted to a jury, rather than determined by a judge at sentencing, because "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to a jury.").

[4] Descamps v. United States, 133 S. Ct. 2276 (2013)(holding that when a statute is not divisible between violent and nonviolent crimes, the reviewing court must simply use the categorical approach to determine whether the conviction in question qualifies as a predicate conviction under the Armed Career Criminal Act "ACCA").

minimum sentence. The Government was unable to decipher petitioner's handwriting as to the other case he cited to,[5] but this ground should be dismissed because it is irrelevant.

### III. Analysis

#### A. Petitioner's Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

#### B. Waiver

[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the

---
[5] Descamps, *supra.*

7

background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for

8

a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears

that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a §2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D. Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that §2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641, 645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a §2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. §2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a §2255 would create a large exception to the scope of §2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a

distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the §2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the District Court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 59-2 at 15 - 16). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in exchange for some of the Government's concessions, he was waiving his right to appeal his sentence or to collaterally attack the legality of the guilty plea and sentence, as long as it was within the maximum sentences of ten years for Count One and twenty years for Counts Seven, Nine and Thirteen, and it was based on a Guideline total offense level determination of 29 at Criminal History VI or lower. (Id. at 14 - 16). Because petitioner was determined to be an career offender, his base offense level was 32, but after a two-level reduction for acceptance of responsibility and the granting of the Government's motion for a third level, his total offense level was 29 (Dkt.# 59-3 at 5), and his Criminal History Category was VI; he received an aggregate sentence of 188 months, or 15.66 years imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and

voluntarily waived the right to collaterally attack his conviction and sentence and to file this §2255 motion, except for claims of ineffective assistance of counsel arising after the entry of the guilty plea. Thus, a review of petitioner's claims enumerated herein as Grounds One, Two and Four are precluded.

However, a waiver analysis may not be dispositive of all of the issues in this petition. To the extent that petitioner has also raised an ineffective assistance of counsel claim arising after the entry of the plea, that is excepted from his waiver and will be given review.

**C. Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper</u>

v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**Ground Three**: **Whether Counsel's Performance was Ineffective After Sentencing, for Failing to File an Appeal on Petitioner's Behalf when Petitioner Requested that Counsel Do So.**

Petitioner asserts that counsel was ineffective for failing to file an appeal on his behalf after petitioner requested that counsel do so. Petitioner's §2255 gives no more detail on the issue than this, and he did not file a reply to the Government's response.

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S.738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, *supra* at 478.

In this case, petitioner merely asserts without elaborating that he "requested" that counsel file a notice of appeal on his behalf.

The government asserts that it cannot meaningfully respond to petitioner's allegations of ineffective assistance, because upon a request to petitioner's former counsel for information regarding petitioner's claim, counsel declined to respond, citing ABA Formal Opinion 10-456 and attorney-client privilege. (Dkt.# 59-4).

Because the government was not privy to the confidential exchanges that took place between the petitioner and his attorney, and the government has been unable to provide any information from the petitioner's attorney regarding what instructions, if any, he received regarding an appeal, the petitioner's motion and the government's response do not conclusively establish that petitioner is entitled to no relief. Accordingly, I find that an evidentiary hearing is necessary to determine whether petitioner requested his attorney file an appeal and whether counsel ignored or refused such instructions. See 28 U.S.C. §2255 (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); see also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

An evidentiary hearing, solely on the issue of whether petitioner instructed his counsel to file an appeal shall be held at **1:30 p.m., on Friday, August 14, 2015,** in the United States Magistrate Judge Courtroom, Room 433, 4th Floor, U.S. Courthouse, Wheeling, West Virginia. Petitioner shall appear by telephone from his place of incarceration; the Government shall make the arrangements with the BOP to effectuate the petitioner's appearance by telephone.

Any other party, counsel or witness who resides or whose principal office is more than 40 miles from the Wheeling point of court may appear by telephone.

**Robert G. McCoid, Esq**. is appointed to represent petitioner at the evidentiary hearing.

## IV. Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack the sentence with the exception of an evidentiary hearing to determine whether petitioner requested his attorney to file an appeal and whether counsel ignored or refused instructions.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by August 3, 2015**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation electronically to all counsel of record and to Robert G. McCoid, Esq., of McCamic, Sacco & McCoid, and to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket.

DATED: July 20, 2015

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE